Opinion delivered June 23, 1888.

---

No. 6154.

## ARCH BENNETT *v*. THE STATE.

THEFT—FACT CASE—See the statement of the case for evidence *held* insufficient to support a conviction for theft of cattle.

APPEAL from the District Court of Guadalupe. Tried below before the Hon. John Ireland, Special Judge.

This conviction was for the theft of one head of cattle, the property of James Hutchinson, and the penalty assessed against the appellant was a term of two years in the penitentiary.

James Hutchinson was the first witness for the State. He testified that he was the owner of the alleged stolen animal. He thought that the animal was taken from his possession about two years before this trial, but could not be certain that it was so long before. He was certain, however, that this was the third time he had attended court as witness in this case, and his animal was taken, without his consent, about two weeks before he attended court the first time. One morning the witness went to the range to drive his oxen and cows to water. When he reached

the water hole he observed that one of his cows was restless and uneasy and would not drink. Witness then observed that her yearling calf was gone. The cow finally left the water hole and started off. Witness left his other cattle at the water hole and followed that cow. She led him to a hollow in the brush, near the Miller spring, and about three-quarters of a mile from Dan Murphy's house, where the witness found the hide and entrails of a recently slaughtered yearling. Upon examination he found the hide to be that of the yearling of the cow. It was a red and white speckled hide, and was in the witness's brand—JH. The condition of the hide and entrails indicated that the animal was killed on the day or the night before. Witness took the hide home. He had not seen the yearling for a week before he found the hide. The hide was found by witness on Tuesday of the week that the examining trial of the defendant was held, and about two weeks before the witness first attended this court in connection with this case. Horse tracks led from the hide and entrails, which the witness followed to the public road. The rain fall of that morning had partially obliterated tracks in the road, and witness could not trail the horse any further than to the road. The people of that neighborhood suffered greatly from the drouth that year. Defendant had cattle on that range, and they watered at the Miller spring.

Dan Murphy testified, for the State, that on Wednesday, in April, 1887, he heard that Hutchinson found the hide and entrails of his (Hutchinson's) yearling near the Miller spring. On the previous Monday the witness was splitting rails on some land he had rented. The defendant rode up and got into a conversation with the witness about religion. The witness then observed nothing unusual about the defendant or his horse. He had seen the defendant riding about the neighborhood previous to the said Monday. On Tuesday night after the said conversation the witness heard a cow lowing down about his home field fence. Defendant, who lived about three miles from witness's place, had cattle on the range, and they watered at the Miller spring.

Deputy Sheriff George Mayfield testified, for the State, that Justice of the Peace Lowther, on Thursday, April 14, 1887, placed in his hands a warrant to search defendant's premises for beef belonging to Hutchinson. James Caddell went with witness to serve the warrant. They found defendant in the field and witness read to him the search warrant, which said warrant

Statement of the case.

was also a conditional warrant of arrest. Witness fully explained the said instrument to defendant, who then told witness to go to his house, and that after he, defendant, had returned a certain borrowed ox yoke, he would join witness at the house. Witness replied that he desired the presence of the defendant at the search of the house, and that he must go to the house at once. Before reaching the house the defendant said that he had some fresh beef, and after he got to the house he reached under the table and pulled out a tub covered with a box. Before uncovering it the defendant asked the witness: "Can you tell my beef from Hutchinson's?" The box was then removed and thirty or forty pounds of fresh beef was exposed to the view of the witness. Witness took it to be the beef of a yearling. Defendant said that he could show the witness the hide of the animal he had killed and reduced to beef. Witness told him that if he could produce the hide it would satisfy him. Defendant started out of the house as if to get the hide, but turned and said that he had sold the hide on the day before to an Indian peddler. The witness then arrested the defendant. Up to this time the defendant was not in arrest. The witness then looked carefully about the defendant's premises to discover evidences of the recent slaughter of a beef, but could find none. The meat in the tub was salted and a little sour. On his cross examination the witness said that the defendant told him that he did not hang out his meat because the neighborhood was full of hungry negroes, who would, if they saw it, beg, borrow or steal it. Witness did not warn defendant before he made the statements about the meat and hide. James Caddell testified substantially as did the witness Mayfield.

John Williams testified, for the State, that he was the man known as the "Indian peddler." He saw the defendant the first time to know him at the May term, 1887, of this court. He never bought a hide from the defendant at any time. He was in the negro colony in Guadalupe county in April, 1887, and traded some meal and pans to Lewis King for a very dry hide. Witness did not know defendant's wife, and could not say that she was or was not present when he traded with King for the hide.

The defense offered no evidence.

*James Greenwood* and *W. R. Neal,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. Whilst the circumstances proved are strongly inculpatory, they are not, in our judgment, of that conclusive nature required by the law to warrant conviction of crime. They are not inconsistent with every other reasonable hypothesis than that of the defendant's guilt. Each and all of them may be true, and yet the defendant's guilt does not follow with moral certainty. Each and all of them may be explained reasonably and consistently with the defendant's innocence, and we must therefore set aside the conviction because not supported by the evidence.

We are inclined to the opinion that the statement made by the defendant to the officer, after said officer had read and explained to him the search warrant, should not have been admitted against him. We think the testimony shows, not very clearly, however, that the defendant, at the time he made said statements, was virtually, though not ostensibly, under arrest. (Nolan v. The State, 9 Texas Ct. App., 419.) This question, however, on another trial may be clearly settled by a more thorough development of the circumstances under which said statements were made, and we leave the question open for such investigation.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*